SHAW ET AL. vs. THE BR. BANK AT DECATUR.

1. S., the endorser on a protested bill of exchange, held by the Branch Bank at Decatur, procured a discount of his note with a view of paying the bill, but having given no direction as to the application of the proceeds, they were placed to his credit on the books of the Bank, and some time afterwards applied by the cashier to the payment of the note, which was thereupon cancelled and delivered over to S. *Held*— That, in the absence of other proof, the note must be considered as extinguished, and no action can be maintained upon it by the Bank.

Error to the Circuit Court of Morgan. Tried before the Hon. Sidney C. Posey.

THIS was an action of assumpsit by the defendant against the plaintiffs in error on a promissory note for $1120 33, dated the 21st October 1840, and payable six months after date. By the bill of exceptions it is shown, that one Hampton, as the agent of the defendant Ephraim Shaw, took said note at the date of its execution, together with a bill of exchange for $243, to the branch of the Bank of the State of Alabama at Decatur, for the purpose of paying with them a bill of ex-

change for $1200, held by said Bank, which was drawn by one A. T. Shaw on Kirkman, Abernathy & Hanna of New Orleans, and endorsed by the said defendant, Ephraim Shaw, dated November 13, 1839, at six months after date, and which had been protested for non-acceptance, but the said bill of exchange was not taken up by him; that the said note was discounted by the Bank, and after the proceeds had remained for some time to the credit of the defendant Shaw on the books of the Bank—Compton, the cashier, applied the proceeds to the payment of the note itself, and put upon the note the mark of cancellation; that said note was subsequently delivered up to said defendant; and that a suit was instituted on said bill of exchange for $1200 against said defendant, returnable to the fall term 1842, of the Circuit Court of Morgan, on the trial of which, the said Hampton having been summoned as a witness by the defendant, to prove payment thereof by the discount of the note now sued on and the $243 bill of exchange, the said Bank took a non-suit, on the case being called and without its going to the jury. These facts embrace all the evidence. The counsel for the defendant asked three charges, the third of which was that although the note was given by Shaw for the purpose of paying the bill, the jury must find from the evidence that it was so accepted by the Bank; and if they should find that the proceeds were applied to the payment of the note itself, and not the bill, that it was evidence that the Bank did not so accept it. This charge the court refused to give, whereupon the defendant excepted and now assigns it as error.

L. P. WALKER, for plaintiffs in error:

1. There is no doubt that the plaintiff in error had the right to appropriate the proceeds of the note sued on as he chose; but in order to do this, his intention as to the particular appropriation desired must have been signified to the Bank at the time of the discount. A mere *uncommunicated* intention to have the proceeds applied in payment of the bill for $1200 is altogether ineffectual. And in that case, the right to appropriate the proceeds belonged to the Bank, which could make the application either simultaneously with the discount of the note, or *at any time afterwards.*—2 Greenl. Ev. §s 529–30, 2d

edit.: 1 Am. Lead. Ca. 142,144-5-6-7; 12 Ala. Rep. 275; 15 Wend. 19 The evidence in the cause shows that the note sued on was carried to the Bank for the *purpose* of paying the bill for $1200. But it does *not* show that this purpose was *communicated* to the Bank, and the presumption is, that it was not; otherwise, the bill for $1200 would have been taken up by the plaintiff in error, and the note now sued on would not afterwards have been cancelled and *delivered* to him.

2. The doctrine is clear, that if a creditor has once made the appropriation, whether by verbal direction or rendering an account, or by conduct inducing a reliance on a particular appropriation, or bringing suit in a way which declares the application, he is *bound by it,* and cannot afterwards *change* it. 1 Am. L. Ca. 145, 125; 4 Cranch, 317, 321; 1 Wash. 128; 2 Rawle, 316; 5 Watts, 544; 2 N. H. 193; 2 Greenl. Ev. § 532, (a.) Independent of the cancellation of the note, the specific appropriation of its proceeds is clearly established by the suit subsequently brought upon the bill for $1200.—1 Am. Lead. Cases, 143; 20 Maine 457; 23 Pickering 473. Consequently the Bank having once applied the proceeds of the note to the payment of the note itself, (of which application the plaintiff in error was notified by the cancellation and delivery of the note and the subsequent suit on the bill,) had no right afterwards to alter it. And this would be so although the maker of the note had previously directed a different application. The third charge asked was clearly right under the circumstances.

3. But even if the proceeds of the note were intended by Shaw to be appropriated to the bill, and this intention was communicated to the Bank at the time of discount, and that appropriation had been actually made by the Bank, still the cancellation and delivery of the note would be a complete discharge of the debt evidenced by it. There is no common sense in the proposition that a note which the holder has deliberately *cancelled* and given up, can still be sued upon. The *cancellation* of a promissory note *discharges* the debt.—7 Barr's Rep. 100; ib. 251.

Wm. Cooper, for defendant:

1. The defendant below had the right to have such an ap-

Shaw et al. v. Br. Bank at Decatur.

propriation of the proceeds of the note as he chose, if his intention was made known to the Bank at the time the note was discounted, and the Bank could not apply them otherwise than as he directed.—2 Greenl. §§ 529, 530; 12 Ala. Rep. 275; 15 Wend. 19; 2 McCord, 292; 5 Watts, 544; 2 Har. & Gill, 159; 4 Mass. 692; 17 ib. 575; 10 Pick. 415; 12 ib. 463; 7 Wheat. 13.

2. The note was discounted for the express purpose of paying the bill, and the mistake of the cashier in applying the proceeds to the payment of the note and cancelling it cannot, under the circumstances, amount to a payment of the note. The Bank was bound to apply the proceeds to the bill.—Reed v. Boardman, 20 Pick. 441; Dewey v. Bowers, 4 Ired. 538; Morehead v. West Branch Bank, 3 Watts & S. 550; 12 Vt. 608; 13 ib. 15. The defence set up by Shaw to the suit upon the bill is conclusive to show, that the application of the proceeds by the cashier was without his assent, and that he meant to insist upon its application in accordance with the purpose for which it was discounted. Having defeated that action by that defence, he cannot now say that the note is paid. 2 Porter, 401; 2 Stew. 498; 13 Ala. 353; 17 Mass. 575.

3. Other things being equal, the law applies payments to the oldest debt.—9 Wheat. 720; 9 Watts 386; 9 Shep. 138.

4. It does not appear that the note was due when the cashier made the application of the money, and the parties to the note and bill were not the same.

CHILTON, J.—It appears in this case by the bill of exceptions, that although the note sued on, with a bill of exchange for $243, was taken to the Bank for the purpose of paying a bill of exchange for $1200, then in Bank, yet when it was discounted, the proceeds remained on the books of the Bank to the credit of Shaw for some time, without any specific directions from him as to how the same should be applied; and that afterwards the cashier of the Bank applied the proceeds of the note to extinguish it, which was equivalent to cancelling the discount, and having applied the mark of cancellation to it, it was delivered to the defendant.

The bill of exceptions sets out all the proof in the cause,

and from this it does not appear that this cancellation of the paper was made through any mistake. The cashier of the Bank was himself examined, and he does not say that there was any error in regard to it. In this condition, in the absence of further proof, we do not see how the Bank can recover upon the cancelled note.

The general rule is, that where payments are made by a debtor to a creditor, the debtor has the right to direct the application of the funds paid, but if he fails to give direction as to the application, then the creditor may apply the payment as he pleases. So, if the debtor has two several sureties bound with him for different debts, he may elect to which of the debts his payment shall be applied, and consequently which of the sureties he will discharge.—Burge on Sur. 122. But when either debtor or creditor legally makes the application of the payment, the other has no right to change it.

The above principles of law are of easy application to the case made by the facts set forth in the record before us. Shaw, the defendant below, having procured the discount of his note now sued on, and the proceeds having been placed to his credit generally upon the books, had the right to order or direct the specific application of the funds, either to the payment of the bill for which he was bound, or the note upon the discount of which the fund accrued. True, it would seem to be out of the ordinary course of dealing for a party to procure the discount of a note, and leave the proceeds in Bank to remain unproductive, while his note bears interest, merely to pay the note when it should fall due; but however unnatural and unwise such an operation may be, still the party had the right to make it, and if he did so, the bill remains unpaid, and the note becomes cancelled. But from aught appearing to the contrary, the discount was rescinded, and no interest was paid by him. The fact that Shaw, the maker of the note, received it back in its cancelled condition, without making any payment other than the application of the funds raised by its discount, is conclusive to show that he acquiesced in its being thus cancelled. His subsequently subpœnaing Hampton to prove that the $1200 bill was paid by the note only proves that he was attempting to set up an unreal and pretended defence, which *show* of defence, perhaps, caused the Bank to en-

ter the nonsuit. The proof clearly warranted the instruction to the jury, that although the note sued on was given by Shaw for the purpose of paying the bill, the jury must find that it was accepted by the Bank in payment, and that the subsequent conduct of the parties in applying the proceeds to the cancellation of the note, as shown in proof, was evidence that no such agreement existed. But if such agreement had been made, still before it was executed by the application of the funds in accordance with it, the parties could have altered it. Certainly Shaw, who has received the benefit of the funds in cancelling his note, cannot be allowed to avail himself of them again in satisfaction of the bill. This view shows that the note is extinguished and that the bill remains unsatisfied, so far as the proceeds of the note are concerned.

The cases to which we are cited by the counsel for the defendant in error do not militate against the view here taken. The case of Dewey v. Bowers, et al. 4 Ired. Rep. 538, merely decides that the giving up a note by the creditor to the debtor, through a mistake, is no payment or satisfaction of it.—Morehead v. The West Branch Bank, 3 Watts' Rep. 550, but affirms the general doctrine, that if a debtor give a draft to the creditor and direct the application of the proceeds to a particular debt, the creditor is bound to apply it to that liability. None of the cases come up to the case at bar, and we apprehend no case can be found where the debtor, after his acquiescence in the application of the fund in the extinguishment of one debt, and holding the cancelled demand in his hands, has been permitted to turn round and avail himself of the fund so applied the second time, in the extinguishment of another demand, to pay which he may originally have designed it. The note sued on has been cancelled. Both parties have acquiesced and adopted the application of the fund to its extinguishment, and the bill remains as it was.

The ruling of the Circuit Court was opposed to this view, and the judgment must be reversed, and the cause remanded.